E-FILED
Monday, 23 November, 2020  08:37:59 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-2265 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, | ) | |
| STEPHEN BRYAN, in his official | ) | |
| capacity, and JUSTIN BROWN, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

On September 25, 2020, Plaintiff filed his Complaint (#1), pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*, alleging due process violations and sex discrimination.

Now before the court is Plaintiff's Motion for Temporary Restraining Order (#5). Plaintiff's Motion includes several attachments. Defendants filed a Memorandum in Opposition (#21) which also includes several attachments. Plaintiff filed a Reply (#25) with another attachment. The court has carefully considered the parties' briefs, all attachments, and all documents filed under seal. Plaintiff's Motion (#5) is fully briefed.

The court finds a hearing or oral argument would not assist the court in its decision on this matter. For the following reasons, Plaintiff's Motion (#5) is DENIED.

A. <u>Findings of Fact</u>

The court has reviewed the documentary evidence provided by the parties. The court finds the following facts for purposes of this order only, based on the record before it at this early point in the case, and under the unique circumstances of a motion for preliminary injunctive relief. These findings are without prejudice to any future findings, including the court's upcoming ruling on the pending Motion to Dismiss.

Plaintiff John Doe was a freshman at the University of Illinois Urbana-Champaign ("the University") during the 2019-2020 school year.

The court finds solely for purposes of this Order that Plaintiff and the University had a contractual relationship. The terms of that contract included the University Code and Statutes, and Discipline Policy, including the Sexual Misconduct Policy. The court also finds, again only for the purposes of this order, that the terms of that contract provided Plaintiff would be afforded due process in any disciplinary proceedings against him.

Plaintiff engaged in sexual activity with a female freshman student, Jane Roe, in October 2019. Later the same day, Ms. Roe told Plaintiff about her past struggles with mental health, including past suicidal ideation. Plaintiff proceeded to "ghost" (i.e., cut off all communication with) Ms. Roe. Ms. Roe may have been looking forward to invitations to social events from Plaintiff – the record is not entirely clear on this point. In April 2020, based on the October 2019 incident, Ms. Roe accused Plaintiff of sexual assault through the University's formal student discipline process.

The University investigated Ms. Roe's claims and produced an Investigation Report summarizing the findings of the investigation.

The University held a hearing on August 13, 2020. It was undisputed that the October 2019 sexual activity was initially consensual. A central dispute during the University disciplinary proceedings was whether Ms. Roe consented to changing sexual positions. Resolving that dispute came down to a credibility determination based on the testimony of several persons.

On August 18, 2020, the University issued a decision letter which found Plaintiff had violated the Student Code and Sexual Misconduct Policy and dismissed Plaintiff from the University for two years. Plaintiff appealed on August 25, 2020, arguing the hearing panel committed procedural error in its "failure to objectively evaluate the evidence," arguing the panel was biased, and arguing he received a disproportionate sanction. On September 11, 2020, the University denied Plaintiff's appeal.

This lawsuit followed.

Plaintiff seeks an injunction reinstating him retroactively to the beginning of the Fall 2020 term and allowing him to continue his studies at the University pending the outcome of this lawsuit.

Plaintiff contends that all the University would have to do would be to "flip some switches" and Plaintiff could attend classes remotely, perhaps incorporating videoconference technology, and make up the fall term. The University responds that some classes Plaintiff was enrolled in have already ended, that the nature of the

business school classes Plaintiff was enrolled in require group collaboration and cannot simply be done remotely, and that it would be an immense burden on the University's faculty to order them to give Plaintiff special treatment to make up this semester's work.

Based on the documents provided by the parties, the court finds that Plaintiff would be unable to complete all his classes from the fall term, particularly those classes that have already ended and those classes which require extensive group collaboration. Further, the court finds it would be possible, but at a significant expense in time and effort, for the University to allow Plaintiff to make up certain of his other classes.

Plaintiff executed a personal a declaration that provides an account of the emotional distress he is undergoing, a description of his academic achievements at the University, and a description of his career ambitions. Plaintiff's declaration suggests anger, frustration, shock, despair, and sadness. Plaintiff's declaration also shows urgency to be reinstated, and repeated denials of any wrongdoing whatsoever. Based on his declaration, the court finds Plaintiff is feeling emotional distress.

Plaintiff also provides a declaration by an educational consultant. The consultant declares Plaintiff will suffer irreparable harm unless Plaintiff is granted an injunction. Aside from her opinion on one of the legal questions this court is tasked with resolving, Plaintiff's educational consultant also declares Plaintiff would face a lot of difficulty due to an educational gap and due to his disciplinary record.

4

The court declines to accept Plaintiff's educational consultant's legal conclusions. Based on the educational consultant's declaration, the court finds Plaintiff will suffer *some* harm due to an educational gap.

B. Legal Standard

Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). In this circuit, the standards for a temporary restraining order and a preliminary injunction are functionally identical. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082–83 (C.D. Ill. 2001). The Seventh Circuit has explained the requirements for a preliminary injunction:

> To obtain a preliminary injunction, the moving party must show "1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied." *Mil–Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996); see also *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 877 (7th Cir. 1997); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1291 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 [] (1997); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995); *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

> If the movants satisfy this initial burden, the court must balance the irreparable harm to the non-moving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. See *Grossbaum*, 100 F.3d at 1291; *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *Abbott Lab.*, 971 F.2d at 11. The court must also consider the effect of the injunction on nonparties. See *TMT North America*, 124 F.3d 876, 877; *Grossbaum*, 100 F.3d at 1291–92; *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir. 1994).

The [plaintiffs] seek a mandatory preliminary injunction, that is, an injunction requiring an affirmative act by the defendant .... Because a mandatory injunction requires the court to command the defendant to take a particular action, "mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued." *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978); see also *W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (finding that "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

*Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

C. <u>Likelihood of Success on the Merits</u>

The court finds the issue of an adequate remedy at law and irreparable harm is dispositive. Thus, the court need not discuss whether Plaintiff has shown he has a reasonable likelihood of success on the merits. This Order does not find that Plaintiff has even stated a plausible claim to relief in the Complaint – the court will analyze that question in ruling on the pending Motion to Dismiss.

D. <u>Plaintiff Has a Remedy at Law and will not Suffer Irreparable Harm</u>

A district court has considerable discretion in deciding whether to issue a temporary restraining order. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). In order to demonstrate irreparable harm, a plaintiff must show he will suffer immediate harm that cannot be rectified by a final judgment after trial. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001).

Preliminary injunctive relief traditionally takes the form of maintaining the status quo, *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978), but here Plaintiff asks the court to upend the status quo (Plaintiff has been dismissed, the status quo when this

6

suit was filed) and order the University to readmit him, allow him to try to catch up on this semester's classwork, and let him proceed with his academic career until this case is resolved.

Plaintiff argues that he will suffer irreparable harm by way of an educational gap, reputational harm, emotional distress, and lost opportunity.

### 1. Educational Gap and Lost Opportunity

Plaintiff argues he would have to explain the educational gap on his resume, and if he did so truthfully, the explanation would seriously hinder his prospects in myriad ways. As to lost opportunities, Plaintiff argues that his suspension has delayed his career, which he argues will "rob him of certain once-in-a-lifetime opportunities." Some of these opportunities include a chance to apply for summer internships at investment banks, and the chance to participate in the University's Investment Banking Academy.

The court finds here, as it has in the past, that Plaintiff's argument is "too speculative to warrant the extraordinary and drastic remedy of an injunction." *John Doe v. Bd. of Tr. of the University of Illinois*, 2017-CV-2180, Order at 3-4 (C.D. Ill. Dec. 18, 2017).

Plaintiff's educational consultant declares that Plaintiff's current disciplinary record would make it extremely difficult for him to transfer to another school, much less a prestigious one, and the court sees no reason to disagree with her uncontroverted conclusion on that point. And, Plaintiff indeed faces some harm by way of his dismissal from the University, and the resultant time he will be unable to take classes, participate in internship opportunities, and advance his education.

However, not all harm is irreparable. The court finds the harm Plaintiff faces here is temporary and is not irreparable. Plaintiff will have an educational gap, but he can apply for readmission to the University after two years. And, Plaintiff cannot apply for internships with prestigious investment banks right now, but if he wins this case, he should be able to do so in the future.

If Plaintiff prevails on the merits, any reference to the underlying proceedings, and the reasons for them, would almost certainly be expunged from his records with the University. Indeed, if Plaintiff prevails on the merits, the court would find such relief highly equitable.

In any event, whether Plaintiff needed to disclose all details of this case or not, Plaintiff would need to make sure that his damages evidence and argument fully accounts for the educational gap. Perhaps the testimony of an educational consultant such as the one whose declaration supports Plaintiff's instant motion would be useful in such a context.

In sum, then, the court agrees Plaintiff faces some harm. The court finds that the harm Plaintiff faces is not irreparable. The court further finds Plaintiff has an adequate remedy at law.

### 2. Reputational Harm

Plaintiff also argues he is suffering reputational harm at the hands of the University. The court has allowed this matter to proceed with Plaintiff identifying himself by a pseudonym. And, the University appears to be taking all precautions to

avoid publicly identifying Plaintiff. If Plaintiff chooses to disclose the details of his discipline while this case proceeds, that cannot be fairly laid at the feet of the University.

At this stage, Plaintiff's reputation appears to be adequately protected. Plaintiff had good grades, was awarded scholarships, and was active on campus, but the overall picture of Plaintiff's reputation on the record before the court is mixed. Plaintiff's own choice to "proceed to 'ghost' Jane Roe" after they had sex and Ms. Roe disclosed to him her past struggles with mental health and suicidal ideation are notable. After all, Ms. Roe was a member of Plaintiff's University community and a member of his social network, and his choices related to her, even assuming they were not a violation of University Policy, are properly charged to his reputation, and were entirely of his own volition.

The harm to Plaintiff's reputation is not irreparable, and Plaintiff will certainly be able to argue that he is entitled to reputational harm damages if he prevails on the merits of this suit, when all the facts about Plaintiff's reputation can be properly assessed by a factfinder.

### 3. Emotional Distress

Plaintiff argues that he "testifies poignantly to the emotional turmoil that Ms. Roe's false charges, and the school's response to them, are putting him through," including that he is "crippled personally and socially, a phenomenon common among those convicted by their schools for sexual assault."

Of course, Plaintiff has not been "convicted" of anything. The University administratively found that it was more likely than not that Plaintiff violated the University's Sexual Misconduct Policy. That is not a pleasant position to find oneself in, but it is a remarkably far cry from being convicted of a criminal sexual offense.

Plaintiff argues, "the University has branded Mr. Doe a sex offender, a uniquely stigmatizing label in our society that undoubtedly injures a person's reputation and good name." The court fully agrees that when a person is *actually* "branded a sex offender," (say, after being convicted of a criminal offense that includes mandatory registration as a sex offender) that designedly carries immensely negative consequences for how such a person can live their life. But, being administratively removed from college is different.

The court has no reason to doubt that Plaintiff is feeling some amount of emotional distress. The court finds Plaintiff's emotional distress is not so severe that it is irreparable. Further, emotional distress damages are compensable at law, so the court finds an adequate remedy will be available to Plaintiff if he prevails on the merits.

E. <u>Balance of the Harms and the Impact on Nonparties and the Public Interest</u>

The court has found Plaintiff has an adequate remedy at law and does not face irreparable harm. Even if the court had found some of Plaintiff's harm did cross into the realm of being irreparable, and even if the court thought an adequate remedy was not available at law, the court, in its broad discretion, would find that the balance of harms between the parties, and consideration of the public interest, favors the University.

10

Regarding the current (Fall 2020) semester, looking at Plaintiff's schedule and what the University would have to do if the court ordered the University to reinstate Plaintiff retroactively to the beginning of the term, the court finds the balance of the harms weighs in favor of the University. The professors of Plaintiff's classes have many other responsibilities. Requiring them to create, essentially, a special curriculum for Plaintiff is unreasonable and would cause irreparable harm to the University vis a vis its ability to properly educate other students. Any irreparable harm to Plaintiff would be clearly outweighed by the irreparable harm to the University.

The court also finds it would be an unreasonable burden, causing irreparable harm to the University, in future academic terms. Plaintiff does not explain exactly what he would have the court order the University do for the future, while this case is litigated.

To the extent Plaintiff may be suggesting this case should be resolved within the next semester, the court simply states this case will proceed as every other case. While the court is aware that Plaintiff would like a near immediate resolution of his suit, so would most other plaintiffs in federal court. Thus, considering a semester is roughly a mere four months long, resolution of this case is unlikely for multiple semesters.

As the Professors' declarations show, the college of business includes highly collaborative classes that often require in-person participation. Plaintiff's request would require, then, for future terms as well, the preparation of a special curriculum amenable to remote participation, to the detriment of everyone else in Plaintiff's classes.

11

Finally, the court finds that the public interest (i.e., the effect the injunction would have on nonparties) weighs in favor of denying an injunction in this case. The court finds the University has a strong interest in independently determining student discipline and academic issues. If this court involved itself by ordering the University to make special accommodations for Plaintiff, necessarily causing a significant impact on that independence, that would undermine that autonomy and would be a significant burden on an institution with tens of thousands of undergraduate students to teach, counsel, and, as relevant here, strike a balance on how to protect them from one another. That burden would, in turn, have a negative impact on uninvolved students and other University stakeholders.

This court cannot oversee, through issuing preliminary injunctive orders, every instance where a student is unhappy with the way the University handles something. Accepting Plaintiff's invitation to intervene would work to the detriment of all of the other students that the University must attend to, and who rely upon the University to operate independently. Thus, consideration for nonparties weighs in favor of denying an injunction.

F. Conclusion

Plaintiff has not shown he faces irreparable harm or lacks a remedy at law absent an injunction. Even if the court reached the balancing of the harms, the court – exercising its broad discretion in balancing the harms – would find that the irreparable harm to the University far outweighs any irreparable harm Plaintiff faces. The court

12

would also find the harm to nonparties weighs in favor of denying an injunction. The court concludes that Plaintiff is not entitled to injunctive relief, or any other relief, at this time. Plaintiff's Motion for a Temporary Restraining Order (#5) is DENIED.

IT IS THEREFORE ORDERED THAT:

Plaintiff's Motion for a Temporary Restraining Order (#5) is DENIED.

ENTERED this 23rd day of November, 2020.

s/ Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE